V. James DeSimone (SBN: 119668)
vjdesimone@vjdlaw.com
Carmen D. Sabater (SBN: 303546)
csabater@vjdlaw.com
Ryann E. Hall (SBN: 306080)
rhall@vjdlaw.com
Emma Lingel-Gary (SBN: 352654)
Elingel-gary@vjdlaw.com
**V. JAMES DESIMONE LAW**
4052 Dey Rey Ave. Suite 102
Marina del Rey, CA 90292
Telephone:  310.693.5561
Facsimile:   323.544.6880
Email: shouhed-vjd000209@vjdlaw.com

Attorneys for Plaintiff, RAFIE OLLAH SHOUHED

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFIE OLLAH SHOUHED,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA; and DOES 1–10, inclusive,<br><br>Defendants. | Case No:  26-5467<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES**<br><br>1. **Violation of Bane Civil Rights Act (Civil Code § 52.1) (Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.)**<br>2. **Assault and Battery (Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.)**<br>3. **Negligence (Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.)**<br>4. **Intentional Infliction of Emotional Distress (Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.)**<br>5. **False Arrest and False Imprisonment (Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.)**<br>6. **Deliberate Indifference to Serious Medical Needs (Fourteenth Amendment; Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.)**<br><br>**DEMAND FOR JURY TRIAL** |

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*Shouhed v. United States of America, et al.*                    V. JAMES DESIMONE LAW
Case No.: 26-5467

## NATURE OF ACTION

1.    This action seeks compensatory damages against DEFENDANTS UNITED STATES OF AMERICA (hereinafter collectively referred to as DEFENDANTS) for violating various rights under federal and state law in connection with federal agents' unjustified assault and use of force against PLAINTIFF by agents of the United States Immigration and Customs Enforcement (ICE), the Department of Homeland Security (DHS), United States Border Patrol, and/or United States Customs and Border Protection (CBP).

2.    On September 9, 2025, between approximately 10:00 a.m. and 11:00 a.m., a group of masked, unidentified federal immigration enforcement officers entered PLAINTIFF's business — a car wash located at 7530 Van Nuys Boulevard in Van Nuys, California — without announcing themselves or presenting any warrant. PLAINTIFF, an 80-year-old United States citizen, was inside his car wash when the raid began. As he attempted to go outside to understand what was happening, a masked agent rushed down a narrow hallway and, without saying anything or giving any warning, violently pushed PLAINTIFF to the ground causing injury and pain.

3.    PLAINTIFF, despite his injuries, went outside in an effort to cooperate and offer assistance. He was met with further and more severe violence and aggression. Without warning or provocation, an unidentified agent grabbed PLAINTIFF by the neck. Another, much larger, agent then ran toward PLAINTIFF and forcefully body-slammed PLAINTIFF forcibly onto the hard pavement, causing severe injury, to his head, brain, arms, and body. Three agents then jumped on PLAINTIFF, sitting on his back and placing their knees on his body, including on his neck, and forcefully handcuffed him. The agents taunted Mr. Shouhed stating, "You don't fuck with ICE."

4.    From the moment the first officer attempted to throw PLAINTIFF to the ground, PLAINTIFF repeatedly told the officers that he had a serious heart

PLAINTIFF'S COMPLAINT FOR DAMAGES
*Shouhed v. United States of America, et al.*                                    V. JAMES DESIMONE LAW
Case No.: 26-5467

condition, that he had recently undergone heart surgery, that he had stents in his heart, that he was in a great deal of pain, and that he was having difficulty breathing. PLAINTIFF repeatedly asked for medical help. The agents ignored his requests. PLAINTIFF was then transported to the Metropolitan Detention Center in Downtown Los Angeles, where he was detained for approximately twelve hours without medical care, without food, without access to his phone or family, and without explanation, even though he informed them he was a United States citizen and was acknowledged by DHS as an American Citizen. After twelve hours of being handcuffed in custody,  he was released without charges.

5.      Upon his release, PLAINTIFF was taken to a hospital by his daughter, where an ER assessment revealed that, as a result of being thrown on the concrete and sat upon by three agents, he suffered bruised ribs with severe chest-wall trauma, multiple abrasions to his torso, torn ligaments in his elbow, and post-concussive symptoms from a traumatic brain injury.

6.      PLAINTIFF was subsequently diagnosed with traumatic brain injury, post-concussive syndrome, post-concussive dizziness related to labyrinthine trauma, bleeding in the brain, cervicalgia, post-traumatic stress disorder, and anxiety. Objective diagnostic testing confirms the severity of these injuries: an EEG performed on September 30, 2025, was significant for central frontal slowing, and a VNG performed on October 2, 2025, yielded results consistent with CNS damage, with gaze nystagmus present for rightward, center, and upward gaze, demonstrating a Traumatic Brain Injury.

7.      PLAINTIFF filed a timely administrative claim under the Federal Tort Claims Act with the Department of Homeland Security, United States Immigration and Customs Enforcement, United States Customs and Border Protection, and United States Border Patrol on September 24, 2025, demanding $50,000,000 in damages. ICE acknowledged receipt of the claim on October 8, 2025, assigning it Claim No. C816D624. More than six months have elapsed since the claim was filed

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*Shouhed v. United States of America, et al.*                          V. JAMES DESIMONE LAW
Case No.:   26-5467

without a final disposition, thereby exhausting PLAINTIFF's administrative remedies.

## PARTIES AND THEIR AGENTS

8.    PLAINTIFF, RAFIE OLLAH SHOUHED ("PLAINTIFF" or "Mr. Shouhed") is, and at all times relevant hereto was, an individual residing in Tarzana, California. He is a United States citizen, 80 years old, and the owner of a car wash located at 7530 Van Nuys Boulevard in Van Nuys, California.

9.    DEFENDANT UNITED STATES OF AMERICA is the sovereign government of the United States and is liable under the Federal Tort Claims Act for the tortious conduct of its employees acting within the scope of their employment.

10.    Defendants DOES 1 through 10, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiff at this time. Plaintiff is informed and believes, and based thereon alleges, that each of the DOE Defendants was in some manner legally responsible for the events and happenings alleged in this Complaint, and that Plaintiff's injuries and damages were proximately caused by their conduct. Plaintiff will amend this Complaint to state the true names and capacities of the DOE Defendants when such identities become known.

11.    At all times relevant hereto, each Defendant was acting as the agent, servant, and employee of each other Defendant and was acting within the course and scope of such agency and employment. At all times relevant hereto, each Defendant ratified, authorized, and approved the conduct of the other Defendants.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over PLAINTIFF's claims pursuant to 28 U.S.C. § 1346(b) (Federal Tort Claims Act) and 28 U.S.C. § 1331 (federal question jurisdiction).

13.    Venue is proper in this court pursuant to 28 U.S.C. § 1402(b) because the underlying acts, omissions, injuries, and related facts and circumstances giving

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*Shouhed v. United States of America, et al.*                    V. JAMES DESIMONE LAW
Case No.:  26-5467

rise to the present action occurred in Van Nuys, Los Angeles County, within the Central District of California.

## FACTUAL ALLEGATIONS

**Background**

14.     PLAINTIFF Rafie Ollah Shouhed is a currently 80-year-old United States citizen. He was naturalized approximately 41 years ago and has lived and worked in the greater Los Angeles area for decades. He is a self-employed small business owner who operates a car wash located at 7530 Van Nuys Boulevard in Van Nuys, California. He is a married man who lives with his wife and daughter.

15.     Prior to the incident on September 9, 2025, PLAINTIFF was cognitively intact. He denies any prior history of memory issues, cognitive impairment, or head trauma. He maintained a healthy lifestyle, including weekly walking, a nutritious home-cooked diet, and an active social and professional life. He was self-employed, actively supervising his staff, fulfilling routine work responsibilities, and socializing with customers at his business.

16.     PLAINTIFF has a serious heart condition, for which he underwent heart surgery in 2024. He has three stents in his heart. His health is a major concern. Despite this vulnerability, PLAINTIFF remained an active, independent, and engaged member of his community and business.

**The Warrantless Raid**

17.     On September 9, 2025, between approximately 10:00 a.m. and 11:00 a.m., a group of federal immigration enforcement officers entered and conducted an unlawful enforcement action at PLAINTIFF's business. They did not announce themselves, nor did they present any warrant.

18.     All of the officers who entered PLAINTIFF's business were wearing gaiter masks that covered their faces. PLAINTIFF could not see their faces clearly and could not identify any of them. The officers were wearing plain clothes, including t-shirts and jeans. They wore vests that read "Police." None of the officers

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*Shouhed v. United States of America, et al.*                                    V. JAMES DESIMONE LAW
Case No.: 26-5467

verbally identified themselves, stated their names, or displayed their names, badge numbers, or other identifying information.

19.    PLAINTIFF described the scene: "The agents had arrived in many different cars. They all wore masks and glasses, as if they were going to war. Several had machine guns." PLAINTIFF's nephew, Mike Shouhed, who arrived at the scene, observed four or five different DHS officers outside the car wash carrying AR-15s and less-lethal projectile weapons.

20.    Because the officers were masked and unidentified, PLAINTIFF did not know who they were, what agency they were from, or what authority they were exercising. PLAINTIFF immediately felt confused and afraid.

**The First Assault**

21.    PLAINTIFF was inside his car wash when the raid began. As he attempted to go outside to understand what was happening, a masked agent rushed down a narrow hallway inside the car wash and ran straight toward PLAINTIFF. When PLAINTIFF saw him rushing toward him, he did his best to stop so they would not collide. However, the agent continued running toward PLAINTIFF and, without saying anything or giving any warning, violently ran into PLAINTIFF, pushing him to the ground. The collision was so severe to PLAINTIFF it generated sufficient force to lift PLAINTIFF off balance and propel him backward before violently striking the ground. The agent then ran over PLAINTIFF's body and continued outside.

22.    Surveillance cameras captured this first assault on video. Despite being injured, PLAINTIFF got up and went outside, seeking to help and to clarify the situation.

**The Second More Severe Assault**

23.    When PLAINTIFF went outside, he observed numerous masked and armed agents on his property. Outside surveillance cameras captured what followed. PLAINTIFF approached the agent and said, "If there is anything I can do

for you, let me help you" — the exact moment that, according to DHS, the then 79-year-old "assaulted and impeded the federal officer." This characterization is belied entirely by the surveillance video, which shows PLAINTIFF approaching in a slow, cooperative manner without any physical aggression of any kind. An independent eyewitness customer who was present at the scene and captured video footage, confirmed that PLAINTIFF walked up to the agents not threatening — just asking, "hey, how can I help you."

24.    Without warning or provocation, an unidentified agent grabbed PLAINTIFF by the neck. While PLAINTIFF struggled to stay on his feet, informing them, "stop, I have a heart condition", another agent swiftly ran up, grabbed PLAINTIFF from behind, and slung him on the asphalt. The two agents straddled him; one used all his weight to shove PLAINTIFF's shoulder into the pavement and flip him over. Seconds later, a third agent rushed in, and all three of them dug their knees into PLAINTIFF's back and neck while they pushed and pulled his limbs. Meanwhile, a fourth agent appeared with an AR-15 rifle. With his hand on his gun, he backed up to the altercation and looked out at the street, standing guard in case a bystander tried to intervene. The entirety of this assault occurred on PLAINTIFF'S property and was captured on the outside surveillance cameras at PLAINTIFF's business.

25.    Under the weight of all three men, PLAINTIFF struggled to breathe. He recalled begging: "Let me go. I'm not here to fight with you. I'm an old man with a stent in my heart." The agent responded: "You don't fuck with ICE. We are here."

26.    At no point during this encounter did any agent identify himself, state his name or badge number, or explain why force was being used against PLAINTIFF. PLAINTIFF did not harm or threaten any agent. He was not committing any crime. He posed no threat of any kind to any person.

**Denial of Medical Care and Unlawful Detention**

27.    While the three agents were forcefully grabbing PLAINTIFF's arms to

**PLAINTIFF'S COMPLAINT FOR DAMAGES**
*Shouhed v. United States of America, et al.*                                    V. JAMES DESIMONE LAW
Case No.:   26-5467

handcuff him, with one agent's knee on PLAINTIFF's neck, PLAINTIFF told the agents he had a heart condition, that he had recently undergone heart surgery, that he had three stents in his heart, that he was having a hard time breathing, and begged the agents to take him to the hospital or call an ambulance. The agents completely ignored PLAINTIFF's pleas for medical help and instead placed him in handcuffs.

28.    While the agents handcuffed PLAINTIFF and led him toward an unmarked van, he said: "I'm a United States citizen. What are you doing to me?" PLAINTIFF recalled: "[Three agents] grabbed me and threw me in the car and took me to [the Metropolitan Detention Center] downtown. I begged to go to the hospital, but I never got medical attention." The agents never told PLAINTIFF that he was being arrested, why he was being taken, or where he was going.

29.    PLAINTIFF's nephew, Mike Shouhed, who arrived at the scene shortly after the raid, observed PLAINTIFF sitting in the back of a DHS SUV with his legs out of the car, breathing heavily, and with his face chalk white. When Mike Shouhed approached the DHS officer blocking the gate and asked to check on his uncle, stating "He looks like he is going to have a heart attack," the officer responded: "If he needs medical attention, he will get it." PLAINTIFF, however, received no such attention.

30.    PLAINTIFF was taken, along with five of his employees, to the Metropolitan Detention Center in Downtown Los Angeles. Mr. Shouhed was detained for approximately twelve hours without medical care while he suffered in pain and agony from his injuries.

31.    Three agents transported PLAINTIFF to a garage below the Metropolitan Detention Center and left him in the custody of a single guard. Still in handcuffs, PLAINTIFF was instructed to sit in a truck. PLAINTIFF repeatedly asked for medical attention and an explanation for why he had been arrested, to no avail. Finally, the guard said, "If other agents see me talking to you, I will get fired." Once at the detention center, an officer reviewed PLAINTIFF's driver's license and

confirmed that he is a United States citizen. Upon confirming that PLAINTIFF was a United States citizen, the officer said: "Why did these people bring you over here? You have been a United States citizen for 45 years." Despite this confirmation, PLAINTIFF remained in detention for at least an additional ten hours.

32.    Plaintiff was not allowed to contact his family, and his personal belongings, including his phone, were taken. He was not provided any medical attention and was given only one bottle of water during the entire approximately twelve-hour period of his detention in handcuffs.

33.    PLAINTIFF observed, during his hours of detention in the underground parking lot, agents arriving in a variety of unmarked vehicles to unload other recently arrested individuals. "There were many innocent people there," PLAINTIFF said. "There was a ten-year-old little girl who was handcuffed, and her feet were shackled. Her two younger brothers and her parents were treated the same way."

34.    At one point during his detention, a guard allowed PLAINTIFF to use a bathroom, escorting him there in handcuffs. Inside the bathroom, PLAINTIFF observed several bare mattresses laid out on the floor next to the toilets. The guard told PLAINTIFF that the mattresses were used by people the agents decided to hold overnight. PLAINTIFF noticed empty water bottles on the floor and realized that multiple individuals had slept there the night before. These were the conditions maintained by DEFENDANTS for individuals held in their custody.

35.    At approximately 9:00 p.m., an ICE agent arrived and fingerprinted and photographed PLAINTIFF. The agent then returned PLAINTIFF's property and told him he could leave — without identifying himself, providing any paperwork, or offering any explanation for why PLAINTIFF had been handcuffed and detained for nearly twelve hours.

**Immediate Medical Treatment**

36.    Upon his release, PLAINTIFF's daughter observed that his speech was

PLAINTIFF'S COMPLAINT FOR DAMAGES

*Shouhed v. United States of America, et al.*                    V. JAMES DESIMONE LAW
Case No.:   26-5467

incoherent and took him directly to the hospital for medical evaluation and treatment. Medical providers documented injuries including severe chest-wall trauma, rib injuries, contusions and swelling to his elbows and arms, abrasions, a brain bleed, and post-concussive symptoms consistent with a traumatic brain injury.

37.    At the Emergency Department at Providence Cedars Sinai Tarzana Medical Center, where he arrived at 10:15 p.m., The triage nurse documented: "Pt brought in by daughter for chest pain and SOB after an ICE raid at his car wash. Pt was thrown and punched to the ground by ICE. Pt has had recent cardiac stents placed." PLAINTIFF was evaluated by attending emergency physician Shane M. Zeshonski, MD, who reviewed the surveillance video of the incident and documented in his physician note: "Video review of the incident shows a large ICE agent forcefully shoving/colliding with the patient causing him to collide forcefully with the ground."

38.    Dr. Zeshonski documented that PLAINTIFF presented with significant left anterior and lateral chest wall pain making it difficult to breathe, bilateral elbow pain and swelling, and shortness of breath. Physical examination revealed tenderness to palpation of the anterior lateral left chest wall and bilateral soft tissue swelling at the olecranon consistent with hematomas. A full cardiac workup — including two serial troponin measurements, BNP, and a 12-lead EKG — was negative for acute ischemia or cardiac event. A CT scan of the chest, portable chest X-ray, and bilateral elbow X-rays were obtained. The right elbow X-ray revealed soft tissue swelling posterior to the distal humerus and olecranon, consistent with hematoma or bursitis. PLAINTIFF was administered oxygen, an IV line was placed, and he was given pain medication.

39.    The hospital's own diagnostic coding assigned External Cause of Injury code Y35.819A: "Legal intervention involving manhandling, unspecified person injured, initial encounter" — the hospital's contemporaneous, independent classification of the mechanism of PLAINTIFF's injuries. PLAINTIFF was

PLAINTIFF'S COMPLAINT FOR DAMAGES

*Shouhed v. United States of America, et al.*                        V. JAMES DESIMONE LAW
Case No.:   26-5467

discharged at 12:10 a.m. on September 10, 2025 with diagnoses of injury due to physical assault, chest wall pain, hematoma of the right elbow, and olecranon bursitis, and was instructed to follow up with his primary care physician within two days. Total charges for the emergency visit were $14,098.75.

40.   PLAINTIFF reports that it is difficult for him to sleep at night. He has a hard time breathing because his ribs are injured. His doctor indicated there is nothing further that can be done for the rib injuries.

**Traumatic Brain Injury and Ongoing Neurological Injuries**

41.   Within 72 hours of the assault, PLAINTIFF experienced dizziness, nausea, and confusion. As of the initial evaluation on September 24, 2025, PLAINTIFF reported the following ongoing symptoms: dizziness; poor balance; tinnitus; blurry vision; mental fogginess; daytime sleepiness and reduced energy levels throughout the day; confusion; sound sensitivity; increased irritability and periods of agitation; sleep disruption due to pain from chest wall injuries sustained in the assault; and shortness of breath. PLAINTIFF could not recall whether he had lost consciousness during the assault. Prior to the incident, PLAINTIFF had no history of memory issues, cognitive impairment, or head trauma.

42.   Physical examination on September 24, 2025, revealed significant tenderness with palpation of the paraspinal neck muscles including the splenius capitis, levator scapula, and rhomboid muscles, as well as bilateral tenderness at the occipital notch. PLAINTIFF exhibited an unstable tandem gait and a positive Romberg test, indicating significant balance impairment.

43.   An EEG performed on September 30, 2025, was significant for central frontal slowing. The study was conducted to evaluate for epileptiform discharges after traumatic brain injury. No epileptiform discharges were observed, but the presence of central frontal slowing is a recognized biomarker of brain injury.

44.   A Videonystagmography (VNG) performed on October 2, 2025, yielded results consistent with CNS damage. Gaze nystagmus was present for

PLAINTIFF'S COMPLAINT FOR DAMAGES

*Shouhed v. United States of America, et al.*                    V. JAMES DESIMONE LAW
Case No.:  26-5467

rightward gaze, center gaze, and upward gaze. The saccade and skew deviation tests were within normal limits. The overall impression confirmed CNS damage.

45.    On September 24, 2025, at the initial evaluation, Dr. Franc ordered an MRI of the brain without contrast with particular attention to the effects of microvascular disease and patterns of atrophy. The MRI was performed the same day at a Westwood imaging facility. The MRI revealed a right frontal abnormality likely representing blood products — radiological findings consistent with intracranial hemorrhage resulting from the assault. On December 17, 2025, board-certified neurosurgeon Parham Yashar, MD, FACS, FAANS, of DOCS Spine + Orthopedics, conducted an initial neurosurgery evaluation and reviewed the MRI. Dr. Yashar confirmed: "His MRI images demonstrated an abnormality within the right frontal lobe which is worrisome for sequelae from trauma versus possible underlying intra/extra-axial lesion." Dr. Yashar ordered a follow-up MRI of the brain with and without contrast, including GRE and SWI sequences — specialized sequences used specifically to detect hemorrhage and blood products — for further characterization of the lesion. Dr. Franc's November 6, 2025 follow-up report also references the abnormal MRI findings and directs PLAINTIFF to see a neurosurgeon for further evaluation, consistent with the referral ultimately fulfilled by Dr. Yashar.

46.    Based on PLAINTIFF's history, the mechanism of injury, the initial symptoms, the neurological examination findings, and the objective diagnostic results, Dr. Franc diagnosed PLAINTIFF with traumatic brain injury, post-concussive syndrome, post-concussional dizziness related to labyrinthine trauma, cervicalgia, post-traumatic stress disorder, and anxiety. Dr. Franc noted that the mechanism of injury — being thrown to the floor twice — would be expected to result in coup/countercoup movements of the head and neck, which, together with the initial symptoms, is diagnostic of traumatic brain injury.

///

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*Shouhed v. United States of America, et al.*                    V. JAMES DESIMONE LAW
Case No.:  26-5467

**Persistent and Ongoing Harm**

47.   PLAINTIFF's cognitive impairments have had a severe and ongoing impact on his professional and daily life. He reports difficulty supervising his staff and fulfilling routine responsibilities due to short-term memory lapses. He frequently forgets conversations, becomes lost while driving or walking, misplaces items, experiences confusion about dates, and forgets where his car is parked. His daily brain fog has adversely impacted his work performance. He has withdrawn from social interaction with friends and customers at work because he has difficulty following conversations and frequently needs questions to be repeated to him. He also reports impairment with instrumental activities of daily living, including the ability to use public transportation, arrange for transportation, and engage in routine communication using the phone, internet, or mail — basic functions of modern independent life that PLAINTIFF previously had no difficulty performing.

48.   PLAINTIFF's ability to drive has been materially impaired due to disorientation, confusion, and getting lost, representing a significant and distressing loss of independence for a previously active 80-year-old.

49.   PLAINTIFF's treating physician has recommended an extensive course of future treatment, including: a neurosurgeon consultation and MRI brain with contrast; vestibular physical therapy two to three times per week for twelve weeks; cognitive behavioral therapy; psychotherapy; psychiatric medication management; transcranial magnetic stimulation; red light therapy for tinnitus; Memantine for cognitive improvement; and ongoing monitoring and follow-up for traumatic brain injury and post-concussive syndrome.

**Economic Harm to PLAINTIFF's Business**

50.   As a direct result of the raid and assault, PLAINTIFF was forced to temporarily close his car wash, as none of his employees, including those who are United States citizens, would return to work due to fear of another unannounced, warrantless raid. PLAINTIFF suffered significant economic losses as a result of this

forced closure.

///

///

///

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*Shouhed v. United States of America, et al.*                    V. JAMES DESIMONE LAW
Case No.: 26-5467

## FIRST CAUSE OF ACTION

### Violation of Bane Civil Rights Act

### (Civil Code § 52.1)

### (Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.)

### Against ALL DEFENDANTS

51.  PLAINTIFF realleges the information set forth in the preceding paragraphs and incorporates it into this cause of action as if it were fully alleged herein.

52.  This cause of action is asserted against DEFENDANTS UNITED STATES OF AMERICA, and DOES 1-10 under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.

53.  As alleged herein, DEFENDANTS interfered or attempted to interfere, by threats, intimidation, violence, and coercion with PLAINTIFF's rights under California Civil Code section 43, the right of protection from bodily restraint and bodily harm, and Penal Code Sections 240-245, assault and battery. DEFENDANTS' conduct independently constituted coercive interference with PLAINTIFF's rights under the Fourth and Fourteenth Amendments to the United States Constitution, and rights under the California Constitution, including the right to be free from excessive and unreasonable force, the right to be free from false arrest, the right to due process, and the right to bodily integrity. Pursuant to the Ninth Circuit's decision in *Xue Lu v. Powell*, the FTCA's waiver of sovereign immunity extends to Bane Act claims deriving from state statutory rights, including Civil Code section 43.

54.  The agents who assaulted PLAINTIFF made no effort to de-escalate the situation, issued no warnings prior to using force, and never identified themselves or the authority under which they were acting. The force used, including violently throwing a 79-year-old man with a documented heart condition and cardiac stents to the ground twice, pinning him with three officers with a knee on

his neck, and then detaining him for nearly twelve hours without medical care despite his repeated pleas, was extreme, unnecessary, and in blatant disregard of PLAINTIFF's rights.

55.    DEFENDANTS' conduct caused PLAINTIFF catastrophic physical injuries as described above, extreme physical pain and suffering, limitation of function and activities, mental anguish, psychological trauma, and emotional distress.

56.    As a result of their conduct, DEFENDANTS are liable for PLAINTIFF's injuries under the doctrine of respondeat superior and the Federal Tort Claims Act.

57.    PLAINTIFF is informed and believes, and thereon alleges, that the acts of federal agents were willful, malicious, intentional, oppressive, reckless, and were done with willful and conscious disregard of the rights, welfare, and safety of PLAINTIFF.

58.    PLAINTIFF brings this claim seeking all damages under state law, including treble damages pursuant to Civil Code Section 52.1.

///

///

///

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*Shouhed v. United States of America, et al.*                    V. JAMES DESIMONE LAW
Case No.:    26-5467

## SECOND CAUSE OF ACTION

### Assault and Battery

### (Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.)

### Against ALL DEFENDANTS

59. PLAINTIFF realleges the information set forth in the preceding paragraphs and incorporates it into this cause of action as if fully alleged herein.

60. This cause of action is asserted against DEFENDANT UNITED STATES OF AMERICA and DOES 1–10 under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.

61. Federal agents, while acting within the course and scope of their duties as employees of the United States of America, through their employment with ICE, DHS, and/or CBP, wrongfully, unlawfully, intentionally, and violently: (a) slammed PLAINTIFF to the ground without warning as he walked through his own car wash; (b) grabbed PLAINTIFF by the neck without provocation; (c) body-slammed PLAINTIFF onto the hard pavement; and (d) pinned PLAINTIFF on the ground with three agents, one of whom placed his knee on PLAINTIFF's neck, causing severe and debilitating injuries.

62. PLAINTIFF did not consent to this contact.

63. DEFENDANTS' conduct was intentional, willful, and malicious.

64. At the time of the battery, PLAINTIFF posed no threat to DEFENDANTS or any other person. He was attempting to cooperate with agents, offering to provide paperwork for his employees, and seeking only to understand the situation. He did not touch any agent, threaten anyone, or interfere physically in any way.

65. An independent eyewitness customer at PLAINTIFF's car wash who was present and captured video footage at the scene, observed PLAINTIFF approach the agents in a non-threatening manner, simply asking "hey, how can I help you," at which point the agents immediately grabbed him and body slammed

him to the ground.

66. DEFENDANTS' use of force was unreasonable, unjustified, and exceeded any lawful authority.

67. As a result of their conduct, DEFENDANT UNITED STATES OF AMERICA is liable for PLAINTIFF's injuries under the doctrine of respondeat superior and the Federal Tort Claims Act.

68. As a direct and proximate result of DEFENDANTS' battery, PLAINTIFF suffered severe physical injuries, including severe chest wall trauma and contusion with tenderness to palpation of the anterior lateral chest wall making breathing difficult, bilateral elbow contusions and hematomas, a right frontal intracranial abnormality likely representing blood products consistent with hemorrhage as documented by MRI on September 24, 2025, and confirmed on neurosurgical evaluation by Dr. Parham Yashar, MD, FACS, FAANS, on December 17, 2025; traumatic brain injury, post-concussive syndrome, a brain bleed, cervicalgia, post-traumatic stress disorder, anxiety, and the full catalog of ongoing cognitive, physical, emotional, and occupational harms described herein.

69. PLAINTIFF is seeking all damages under this claim.

///
///
///

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*Shouhed v. United States of America, et al.*
Case No.: 26-5467

V. JAMES DESIMONE LAW

## THIRD CAUSE OF ACTION

### Negligence

### (Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.)

### Against ALL DEFENDANTS

70.    PLAINTIFF realleges the information set forth in the preceding paragraphs and incorporates it into this cause of action as if fully alleged herein.

71.    This cause of action is asserted against DEFENDANT UNITED STATES OF AMERICA and DOES 1–10 under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.

72.    DEFENDANTS owed PLAINTIFF a duty to exercise reasonable care in their conduct, to refrain from using unreasonable or excessive force, and to provide prompt medical care to a person in obvious and severe medical distress.

73.    The actions of DEFENDANTS toward PLAINTIFF were negligent and reckless, including but not limited to:

   a. Failing to properly assess whether PLAINTIFF posed any threat before using force;

   b. Failing to identify themselves as law enforcement officers or explain the purpose of the enforcement action;

   c. Using violent physical force, including throwing, body-slamming, and pinning with a knee to the neck, against a 79-year-old man who posed no threat;

   d. Failing to use de-escalation techniques before resorting to physical force;

   e. Failing to provide adequate warnings before using force;

   f. Failing to provide medical care to PLAINTIFF despite: his repeated, explicit disclosures of a serious heart condition and recent cardiac surgery; his obvious physical distress; his visible difficulty breathing; and PLAINTIFF's nephew's direct warning to officers that

PLAINTIFF'S COMPLAINT FOR DAMAGES

*Shouhed v. United States of America, et al.*                                   V. JAMES DESIMONE LAW
Case No.:   26-5467

PLAINTIFF appeared to be having a heart attack;

g. Detaining PLAINTIFF for approximately twelve hours despite confirming his United States citizenship shortly after his arrival at the detention center;

h. Failing to allow PLAINTIFF to contact his family during detention;

i. Failing to monitor and document any use of force

j. The negligent supervision and training of agents who conducted the enforcement action; and

k. The negligent handling of the incident response.

74. As a direct and proximate result of DEFENDANTS' conduct as alleged above, PLAINTIFF was caused to suffer catastrophic physical injuries, a traumatic brain injury with objective diagnostic confirmation, severe physical, mental, and emotional pain and suffering, and lasting occupational and daily life impairments.

75. PLAINTIFF is seeking all damages under this claim.

///

///

///

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*Shouhed v. United States of America, et al.*                    V. JAMES DESIMONE LAW
Case No.: 26-5467

## FOURTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.)

### Against ALL DEFENDANTS

76.   PLAINTIFF realleges the information set forth in the preceding paragraphs and incorporates it into this cause of action as if fully alleged herein.

77.   This cause of action is asserted against DEFENDANT UNITED STATES OF AMERICA and DOES 1–10 under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.

78.   DEFENDANTS' conduct as described above was extreme and outrageous and was done with the intent of causing PLAINTIFF to suffer emotional distress, or with reckless disregard as to whether their conduct would cause him to suffer such distress. Specifically: masked and unidentified agents violently assaulted a 79-year-old man with a known heart condition, on his own business property, without warning or justification; pinned him to the ground with a knee on his neck; dismissed his agonized pleas for medical help; transported him to a detention facility in an unmarked vehicle without telling him why he was being taken or where he was going; held him in handcuffs for approximately twelve hours without medical care, access to his phone, or explanation; and released him without charges, without apology, and without identifying themselves, as if the brutalization of a United States citizen in his own business were unremarkable.

79.   PLAINTIFF reported: "This experience of masked, unidentified agents raiding my business has had a lasting impact on me physically and emotionally. I have a hard time breathing because my ribs are injured. It is difficult for me to sleep at night. This incident has left me with anxiety, intrusive recollections, insomnia, and intense fear around other officers and at my business."

80.   PLAINTIFF, who was naturalized 41 years ago and has lived as a law-abiding American citizen for decades, was left to reconcile these events with deeply

held beliefs about his country.

81.    PLAINTIFF has been diagnosed with post-traumatic stress disorder and anxiety as a direct result of this incident, and his treating physician has recommended cognitive behavioral therapy, psychotherapy, psychiatric medication management, and transcranial magnetic stimulation to address his posttraumatic mood disorder.

82.    As a further direct and legal result of the acts and conduct of DEFENDANTS, PLAINTIFF has been caused to suffer and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, anxiety, psychological harm, physical pain and suffering, and permanent psychological trauma. The exact nature and extent of said injuries is presently unknown to PLAINTIFF. PLAINTIFF does not know at this time the exact duration or permanence of all said injuries but is informed and believes, and thereon alleges, that some if not all of the injuries are reasonably certain to be permanent in character.

83.    As a result of their conduct, DEFENDANTS are liable for PLAINTIFF's injuries under the doctrine of respondeat superior and the Federal Tort Claims Act.

///

///

///

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*Shouhed v. United States of America, et al.*                    V. JAMES DESIMONE LAW
Case No.: 26-5467

# FIFTH CAUSE OF ACTION

## False Arrest and False Imprisonment

## (Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.)

## Against ALL DEFENDANTS

84. PLAINTIFF realleges the information set forth in the preceding paragraphs and incorporates it into this cause of action as if fully alleged herein.

85. This cause of action is asserted against DEFENDANT UNITED STATES OF AMERICA and DOES 1–10 under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.

86. DEFENDANTS intentionally confined and detained PLAINTIFF against his will. PLAINTIFF did not consent to his arrest or detention. DEFENDANTS had no warrant for PLAINTIFF's arrest and no lawful basis to arrest or detain him. PLAINTIFF was, and at all times has been, a United States citizen. He had committed no crime, was not suspected of any crime, and posed no threat to any person.

87. Shortly after PLAINTIFF's arrival at the Metropolitan Detention Center, an officer confirmed — by reviewing PLAINTIFF's driver's license — that he was a United States citizen. Despite this confirmation, PLAINTIFF remained in custody for approximately ten additional hours, in handcuffs, without food, without medical care, without access to his phone or family, and without any explanation.

88. PLAINTIFF's detention was so plainly unlawful that even an Officer at the detention facility, upon reviewing PLAINTIFF's identification, remarked: "Why did these people bring you over here? You have been a United States citizen for 45 years."

89. PLAINTIFF was released after approximately twelve hours of total detention, without being charged with any crime, without receiving any paperwork, and without receiving any explanation from DEFENDANTS. He was never told why he was arrested, why he was transported to the detention center, or why he was

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*Shouhed v. United States of America, et al.*                    V. JAMES DESIMONE LAW
Case No.: 26-5467

held after his citizenship was confirmed.

90.    As a direct and proximate result of DEFENDANTS' unlawful detention of PLAINTIFF, PLAINTIFF suffered severe physical pain from untreated injuries during his confinement; extreme emotional distress, humiliation, and fear; a post-traumatic stress disorder diagnosis that persists to this day; and lasting harm to his sense of safety, dignity, and identity as an American citizen.

91.    As a result of their conduct, DEFENDANTS are liable for PLAINTIFF's injuries under the doctrine of respondeat superior and the Federal Tort Claims Act.

///

///

///

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*Shouhed v. United States of America, et al.*                    V. JAMES DESIMONE LAW
Case No.: 26-5467

## SIXTH CAUSE OF ACTION

### Deliberate Indifference to Serious Medical Needs

### (Fourteenth Amendment; Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.)

### Against ALL DEFENDANTS

92.　PLAINTIFF realleges the information set forth in the preceding paragraphs and incorporates it into this cause of action as if fully alleged herein.

93.　This cause of action is asserted against DEFENDANT UNITED STATES OF AMERICA and DOES 1–10 under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. The deliberate indifference standard derives from the Fourteenth Amendment's protection against deprivation of liberty without due process of law, which applies to pretrial detainees.

94.　While DEFENDANTS' agents were forcefully handcuffing PLAINTIFF on the pavement, PLAINTIFF told them that he had a heart condition, that he had recently undergone heart surgery, that he had three stents in his heart, and that he was having a hard time breathing. He begged them to take him to the hospital or call an ambulance. The agents completely ignored his pleas and placed him in handcuffs. This was not a minor complaint. PLAINTIFF's medical records confirm a documented history of coronary artery disease, a prior myocardial infarction, and a cardiac catheterization with stent placement on May 8, 2024. Any reasonable officer confronted with a 79-year-old man with his cardiac profile, pinned on the pavement and gasping that he could not breathe, would have known that failing to summon immediate medical care posed an obvious and serious risk to his life. PLAINTIFF's nephew, Mike Shouhed, who observed PLAINTIFF being placed in a DHS vehicle, noted that PLAINTIFF's face was chalk white and he was breathing heavily. Mike Shouhed approached an officer and said, "He looks like he is going to have a heart attack." The officer responded, "If he needs medical attention, he will get it." PLAINTIFF received no such attention.

///

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*Shouhed v. United States of America, et al.*　　　　　　　　　　V. JAMES DESIMONE LAW
Case No.: 26-5467

95.   Despite obvious swelling and bruising, and PLAINTIFF's repeated reports of chest pain and a heart condition with three cardiac stents, agents denied him medical evaluation. PLAINTIFF was detained for approximately twelve hours at the Metropolitan Detention Center without any medical care while he suffered in pain and agony from his injuries.

96.   PLAINTIFF's need for medical attention was obvious and serious. He was a 79-year-old man with a documented cardiac history, three cardiac stents, and recent heart surgery. He was violently thrown to the ground twice, pinned by three agents with a knee on his neck, and was visibly in acute distress. His repeated explicit requests for medical help, his visible difficulty breathing, his age, and his known cardiac history collectively made his serious medical need apparent to any reasonable officer. DEFENDANTS consciously disregarded that need.

97.   As a direct and proximate result of DEFENDANTS' deliberate indifference, PLAINTIFF suffered prolonged physical agony from untreated chest wall injuries, bilateral elbow hematomas, and post-concussive symptoms during his twelve hours of detention. He was denied timely medical evaluation and intervention that his condition urgently required. His injuries, including traumatic brain injury, post-concussive syndrome, and post-traumatic stress disorder, were permitted to go undiagnosed and untreated for the entirety of his detention.

98.   As a result of their conduct, DEFENDANTS are liable for PLAINTIFF's injuries under the doctrine of respondeat superior and the Federal Tort Claims Act.

///

///

///

26

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*Shouhed v. United States of America, et al.*                                    V. JAMES DESIMONE LAW
Case No.:   26-5467

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff RAFIE OLLAH SHOUHED prays for judgment against DEFENDANT UNITED STATES OF AMERICA and DOES 1–10, and each of them, as follows:

1. For general damages and non-economic damages according to proof at trial;
2. For special damages according to proof at trial, past and future lost wages and loss of earning capacity; economic losses attributable to the forced closure of PLAINTIFF's business; and costs of ongoing psychological and neurological treatment;
3. For treble damages under Civil Code § 52.1;
4. For prejudgment interest as allowed by law;
5. For costs of suit incurred herein;
6. For attorneys' fees under the Equal Access to Justice Act; and
7. For such other and further relief as the Court deems just and proper.

Date: May 21, 2026

**V. JAMES DESIMONE LAW**

By: _____

V. JAMES DESIMONE, ESQ.
CARMEN D. SABATER, ESQ.
RYANN E. HALL, ESQ.
EMMA LINGEL-GARY, ESQ.

Attorneys for PLAINTIFF,
RAFIE OLLAH SHOUHED

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*Shouhed v. United States of America, et al.*          V. JAMES DESIMONE LAW
Case No.: 26-5467

## <u>DEMAND FOR JURY TRIAL</u>

PLAINTIFF RAFIE OLLAH SHOUHED hereby demands a trial by jury on all issues so triable.

Date: May 21, 2026

**V. JAMES DESIMONE LAW**

By:_____

V. JAMES DESIMONE, ESQ.
CARMEN D. SABATER, ESQ.
RYANN E. HALL, ESQ.
EMMA LINGEL-GARY, ESQ.

Attorneys for PLAINTIFF,
RAFIE OLLAH SHOUHED

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*Shouhed v. United States of America, et al.*　　　　　　　V. JAMES DESIMONE LAW
Case No.: 26-5467